

**SO ORDERED.**

**SIGNED March 06, 2007.**

_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**

IN RE:

**EARLIEST JAMES CEASAR**
**LACONYA JONES CEASAR**                                    **CASE NO. 06-20355**

    **Debtors**                                                        **CHAPTER  13**

-----------------------------------------------------------------------------------------------------------------
**REASONS FOR DECISION**
-----------------------------------------------------------------------------------------------------------------

This matter comes before the court as an objection by Keith A. Rodriguez, the standing

Chapter 13 trustee (the "Trustee"), to the confirmation of the Debtors' proposed Chapter 13 plan on

the grounds that the plan does not commit all of the Debtors' projected disposable income as

required by 11 U.S.C § 1325(b)(1)(B).  The Trustee's objection centers on the proper application

of the disposable income test to above median income debtors under the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 ("BAPCPA").  This issue requires the court to

wade into an area that has sharply divided the courts: the interplay between § 1325(b)(1)(B) and the

"means test" in § 707(b)(2).  The Trustee argues that the Debtors improperly included the full IRS

allowance for vehicle ownership costs for a vehicle that they own free and clear of any liens in calculating disposable income under § 1325(b)(1)(B). The Debtors respond that the IRS allowance for vehicle ownership expenses referenced by § 707(b)(2) is a fixed minium amount that all debtors may claim regardless of whether a debtor is making a car payment or owns the vehicle free and clear.

The court held a hearing on the Trustee's objection on January 4, 2007, and took the matter under advisement. After considering the briefs, the record, argument of counsel, and relevant authorities, the court sustains the Trustee's objection to confirmation for the reasons set forth below.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). These Reasons for Decision constitute the court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

## BACKGROUND

Earliest and LaConya Ceasar ("Debtors") filed a voluntary chapter 13 petition on September 20, 2006. The Debtors also filed a Form B22C, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, with their petition and schedules. Form B22C is used by all chapter 13 debtors to calculate current monthly income and the applicable chapter 13 commitment period. Because the Debtors' Current Monthly Income ("CMI") exceeds the

median income for the state of Louisiana, the Debtors also used the form to calculate disposable income under § 1325(b)(2).

In calculating their disposable income, the Debtors deducted certain expenses allowed under § 707(b)(2). Lines 27-29 on the Debtors' schedule pertain to deductions for vehicle and transportation costs. On line 27 of their Form B22C, the Debtors claimed operating expenses for two vehicles: a 2005 Saturn Relay wagon and a 1997 Honda Civic. Americredit holds a mortgage on the 2005 Saturn, and the Debtors' schedules reflect a balance of $29,081 on the note. The Debtors own the 1997 Honda free and clear. With respect to the 2005 Saturn, the Debtors claimed no deduction on line 28 because the "average monthly payment" on the note securing the vehicle exceeded the IRS standard vehicle ownership allowance. However, with respect to the 1997 Honda, the Debtors deducted the full IRS ownership allowance of $332 on line 29 of their Form B22C. Based on the calculations and deductions on their Form B22C, the Debtors reported a "monthly disposable income" of $66.56 on line 58.

The Debtors' chapter 13 plan came before the court for confirmation on January 4, 2007. The Debtors' plan proposes to pay $1,245 per month over 60 months.[1] The Trustee objected to confirmation on multiple grounds. However, the sole issue now before the court now is the Trustee's objection to the Debtors' deduction for ownership expenses on the 1997 Honda. According to the Trustee, the ownership allowance on the 1997 Honda should be reduced by $132 because the Debtors own the Honda free and clear, and thus do not make any monthly loan or lease payments

---

[1]The $1,245 includes payments to secured creditors and administrative fees. These expense items are deducted when calculating the monthly disposable income available to unsecured creditors on Form B22C.

on this vehicle.[2]   If this deduction is reduced by the $132 requested by the Trustee, the Debtors

would have an additional $7,141 (exclusive of administrative fees) of disposable income over the

life of the plan to pay unsecured creditors.

## DISCUSSION

The specific issue presented to the court – whether the Debtors can claim an ownership cost

deduction on a car owned free and clear – turns on the interplay between § 1325(b) and the "means

test" in § 707(b)(2).   The starting point for addressing the Trustee's objection is the statutory

language itself.  *Toib v. Radloff*, 501 U.S. 157 (1991); *Pennsylvania Dept. Of Public Welfare v.*

*Davenport*, 495 U.S. 552 (1990); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989).

When "the statute's language is plain, the sole function of the court – at least where the disposition

required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters*

*Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000).

### 1.    Disposable Income and The Requirements for Confirmation Under § 1325(b).

A chapter 13 plan is not confirmable under § 1325(b)(1) if an interested party files an

objection unless the plan either pays all unsecured creditors in full, or provides that all of the

debtor's "projected disposable income" will be applied to make payments to unsecured creditors

under the plan:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation
> of the plan, then the court may not approve the plan unless, as of the effective date of the
> plan-

---

[2]The IRS guidelines and the United States Trustees Office allow an additional $200
allowance for older cars.  Accordingly, the Trustee does not object to $200 of the $332
allowance claimed by Debtors.

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1), *et seq.* Prior to the enactment of BAPCPA, courts determined disposable income based primarily upon the current monthly income and expenses reported on a debtor's Schedules I and J. *See, e.g., In re Miller,* ___B.R.___, 2007 WL 128790 at *2 (Bankr. N.D. Ala. 2007). BAPCPA altered the rules for determining the "projected disposable income" that must be committed by the debtor under § 1325(b)(1)(B). Sections 1325(b)(2) and (3) now provide that:

(2) For the purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended -

(A) (I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions ..., and

(B) if the debtor is engaged in business, for [allowed business expenses].

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than [the applicable median income for a household the size of the debtors].

Under § 1325(b)(2), a debtor excludes "amounts reasonable necessary to be expended ... for the maintenance or support of the debtor" in calculating disposable income. Where, as in the present

case, the debtor is an above-median income debtor, § 1325(b)(3) provides that these expenses must be determined in accordance with § 707(b)(2) – the so-called "means test."

### 2. The Means Test and The Calculation of Disposable Income

Turning to the means test, § 707(b)(2)(A)(ii)(I) states that:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtors resides....

The means test thus incorporates the IRS monthly expense amounts specified in the IRS' "National Standards and Local Standards," and the debtor's *actual* monthly expenses for expenses falling into the IRS' "Other Necessary Expenses."[3] The IRS formulated the allowances in the Local and National Standards for use in determining a taxpayer's ability to pay delinquent taxes. The National Standards for living expenses is a fixed expense allowance for food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous expenses. The IRS' Local Standards include allowances for housing, utilities, and transportation. These IRS allowances are covered in Part IV of Form B22C.

The transportation allowance under the Local Standards is divided into separate categories for vehicle "ownership" and "operating" costs. *See* Internal Revenue Manual ("IRM"), Financial Analysis Handbook § 5.15.1.7 (May 1, 2004).[4] The operating cost component of the allowance relates to the "non-mortgage" costs of a vehicle – such as repairs, maintenance, insurance,

---

[3] The National and Local Standards can be found on the IRS' website at www.irs.gov/businesses/small/article/0,,id=104627,00.html.

[4] The IRM can be found on the IRS' website at www.irs.gov/irm/part5/index.html.

Page 6

registration, fuel, and parking.  IRM § 5.15.1.9.1(B).  The operating cost allowance varies by the

number of vehicles. However, the Local Standards include a baseline operating cost allowance even

if a debtor does not own a vehicle.  This baseline allowance covers the cost of public transportation.

IRM § 5.15.1.7.4(B) ("If the taxpayer does not own a car a standard public transportation amount is

allowed.")[5]  The ownership cost component, on the other hand, covers loan or lease payments on a

vehicle. IRM § 5.8.5.5.2.3

### 3.      Can a Debtor Claim the IRS Allowances For Vehicle Ownership On a Car that is Owned Free and Clear?

The application of the IRS transportation ownership allowance has divided the courts. One

line of decisions holds that a debtor may deduct the ownership allowance for a vehicle even if the

vehicle is owned free and clear and the debtor is not making lease or loan payments. *See, e.g., In re*

*Miller,* ___ B.R. ___, 2007 WL 128790 (Bankr. N.D. Ala. 2007); *In re Haley*, 354 B.R. 340  (Bankr.

D.N.H. 2006); *In re Fowler,* 349 B.R. 414 (Bankr. D. Del. 2006).  These decisions focus on the

mandatory "shall" language in § 707(b)(2)(A)(ii)(I) – "The debtor's monthly expenses ***shall*** be the

debtor's applicable monthly expense amounts specified under the National Standards and Local

Standards" – and reason that the use of the term "shall"mandates use of the specific numbers set forth

in the applicable IRS standards.  In other words, § 707(b)(2)(A)(ii)(I) – and, by extension, §

1325(b)(3) – incorporates the IRS standards as *fixed* allowances that a debtor can claim regardless

of whether the debtor actually incurs the expense.  *See In re Miller,* 2007 WL 128790 *at \*10; see also*

*In Farrar-Johnson*, 353 B.R. 224 Bankr.N.D.Ill.2006) (debtor may deduct standard housing expense

---

[5]The IRS guidelines allow $200 of ownership costs for older-model vehicles regardless of whether or not a debtor makes lease or loan payments on the vehicle.

even though debtor has no actual housing expense). Several of these courts have based their reading

of the statute on Congress' intent to limit the discretion of bankruptcy courts through the enactment

of BAPCPA. According to these courts, since BAPCPA placed limits on judicial discretion in many

areas, § 707(b)(2)(A)(ii)(I) should be read to provide courts with little or no discretion in applying

the IRS allowances. In the words of one court, the means test in § 707(b) was intended to eliminate

the discretion of bankruptcy courts by creating a "backward looking litmus test performed using

mathematical computations of arbitrary numbers, often having little to do with a particular debtor's

actual circumstances and ability to pay a portion of debt." *In re Miller,* 2007 WL 128790 at \*10.

These courts also hold that, because § 707(b)(2)(A)(ii)(I) incorporates only the fixed allowances in

the IRS National and Local standards, courts cannot rely on guidelines in the Internal Revenue

Manual for applying these allowances.

The other line of cases to address this question reaches the opposite conclusion: a debtor

*cannot* claim the IRS allowance for vehicle ownership costs on a vehicle that is owned free and clear.

*See, e.g., In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006); *In re Oliver*, 350 B.R. 294

(Bankr.W.D.Tex.2006);. *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex. 2006); *In re Carlin*, 348 B.R.

795 (Bankr.D.Or.2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Devilliers,*

___B.R___, 2007 WL 92504 (Bankr. E.D. La. 2007). These decisions hold that the ownership

allowance is only applicable under the IRS' own guidelines – and, hence, under § 707(b)(2)(A)(ii)(I)

– if a debtor is making lease or loan payments on a vehicle. While these courts acknowledge the fact

that BAPCPA acted to limit the discretion of courts in some areas, they reason that this application

of the IRS transportation allowance is more consistent with the text of the statute as well as

Congressional intent.[6]  Accordingly, these courts do not view the allowances incorporated by §707(b)(2)(A)(ii)(I) as a fixed allowance that can be claimed regardless of the debtor's actual expenses.

The court agrees with the *McGuire* line of cases that, under § 707(b)(2)(A)(ii)(I), a debtor can only claim the IRS allowances that are applicable to that debtor.  With all due respect, in this court's view, the *Miller* line of cases places undue emphasis the term "shall" in § 707(b)(2)(A)(ii)(I), while giving little or no weight to the critical qualifiers in the text of the statute.  Specifically,  § 707(b)(2)(A)(ii)(I) refers to "the debtor's ***applicable*** monthly expense amounts specified under the National Standards and Local Standards."  The term "applicable"in this passage qualifies the phrase "monthly expense amounts specified under the National Standards and Local Standards." Thus, a debtor can only deduct the IRS allowances that are applicable to that debtor.

The court also respectfully disagrees with the decisions holding that §707(b) precludes courts from looking to the IRS' Internal Revenue Manual in applying the National and Local Standards. While the IRS' guidelines are not binding on the court in applying § 707(b), nothing in the text of

---

[6]Indeed, the adoption of the IRS standards has limited the discretion of courts. The application of these standards is not so much a question of limiting judicial discretion as it is a question of statutory interpretation and applying BAPCPA consistent with Congressional intent as reflected in the text of the statute.  According to the *Slusher* court:

> This court, however, does not read the revisions to chapter 7 and chapter 13 to completely and utterly remove discretion from bankruptcy judges; that would be unwise and produce a system full of injustices for debtors and creditors alike. But adoption of the Financial Collection Standards as administered did, in fact, reduce significantly the discretion a court has to find abuse in many cases.

*Slusher,* 2007 WL 118009 at *13 n. 36.

Page 9

the statute suggests that Congress intended to prohibit courts from using the IRS' own interpretive

guidelines in applying the IRS cost allowances that are expressly incorporated into §

707(b)(2)(A)(ii)(I). Nor does the legislative history evidence any intent to eliminate the Internal

Revenue Manual as guidance in applying the allowances. Accordingly, this court will look to

applicable IRS guidelines in the Internal Revenue Manual in order to determine which allowances

are applicable to a debtor. *See In re Slusher*, ___B.R.___, 2007 WL 118009 (Bankr. D. Nev. 2007)

("In referring to such specialized standards, it would be quite odd if Congress intended to preclude

courts from examining the context in which the authoring agency, the IRS, used and employed those

standards.")

The relevant passages of the IRS guidelines specifically address requirements for claiming

the transportation ownership allowance. The IRS' Internal Revenue Manual describes the ownership

cost component of the allowance as follows:

> Expenses are allowed for purchase and/or lease of a vehicle, with different rates established
> for a first car and, if allowed, a second or more cars. Taxpayers will be allowed the local
> standard or the amount actually paid, *whichever is less.* Generally, auto loan and/or lease
> payments will not continue as allowed expenses after the terms of the loan/lease have been
> satisfied.

IRM § 5.8.5.5.2.3 (emphasis in original). Based on these guidelines, the Debtors cannot claim the full

IRS allowance for transportation ownership costs on their 1997 Honda because they no longer make

lease or loan payments on the car.[7] *See, e.g., In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006)

(no ownership allowance on car owned free and clear); *In re Oliver*, 350 B.R. 294 (Bankr. W.D.Tex.

---

[7]The Debtors are, however, entitled to claim an additional $200 on the Honda because the
vehicle is over 6 years old. *See* IRM § 5.8.5.5.2.

Page 10

2006) (same); *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex.2006) (same); *In re Carlin*, 348 B.R. 795 (Bankr. D.Or. 2006) (same); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex.2006)(same); *In re Devilliers,* ___B.R___, 2007 WL 92504 (Bankr. E.D. La. 2007)(same)

This result is not only consistent with § 707(b)(2)(A)(ii)(I) and the IRS' own guidelines, it is consistent with Congressional intent. Specifically, adoption of the means test was intended to "ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so." 151 Cong. Rec. S2470 (March 10, 2005); *see also In re Barraza*, 346 B.R. at 729 (quoting 151 Cong. Rec. S2470). In the present case, if the Debtors' ownership allowance is reduced by $132, they will be able to commit these additional funds to toward re-paying their unsecured creditors.[8] Accordingly, the court sustains the Trustee's objection to confirmation

### CONCLUSION

For the foregoing reasons, the court sustains the Trustee's objection to confirmation based on the Debtors' deduction of ownership costs on their 1997 Honda. A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

### ###

---

[8]The Debtors also argued that they should be allowed to claim the ownership allowance on the 1997 Honda because, even though they own it free and clear now, they may have to replace the car during the term of their plan. This argument views the ownership allowance as essentially an "acquisition" cost necessary to fund an eventual replacement vehicle. The court disagrees. Nothing in the statute or the IRS guidelines supports the Debtors' position that they can claim an ownership allowance in anticipation of a future car purchase. However, the court's holding does not leave the Debtors without a remedy. If, during the course of their plan, the Debtors need to replace the Honda, they can file a request to modify their plan. *See, e.g., In re McGuire,* 342 B.R. at 614.

Page 11